Filed 4/21/16  Jose E. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE E.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MONTEREY COUNTY,<br><br>        Respondent;<br><br>MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | No. H043293<br>(Monterey County<br>Super. Ct. No. J48283) |

Petitioner Jose E. challenges by writ petition the juvenile court's February 2016 order denying him reunification services and setting a Welfare and Institutions Code section 366.26[1] hearing for June 2016.  He claims that the court erred in finding that one-year-old M.L. (the child) would not benefit from a grant of reunification services to him.  We reject his contention and deny his petition.

---

[1]     Subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

## I. Background

The child was born in late December 2014 to A.L. (the mother). In January 2015, the Monterey County Department of Social Services (the Department) filed a section 300 petition asking the court to take dependency jurisdiction over the child. The child was not detained; she continued to reside with the mother, who entered a residential drug treatment program after the Department learned that she had given birth to the child. The mother had an extensive child welfare history arising largely from her substance abuse, and she did not have custody of any of her five older children. The mother named Jose as the alleged father of the child.

Jose was incarcerated when the child was born and remained incarcerated when the petition was filed. He had been sentenced in September 2014 to 28 months in jail, and he had an extensive criminal history, including convictions for burglary, receiving stolen property, and possession of a controlled substance. Jose sought a paternity test, and the court ordered one. On March 11, 2015, paternity testing was conducted, and it established that Jose was the child's biological father.

Jose was present in custody at the uncontested March 24, 2015 jurisdictional/dispositional hearing. He informed the Department at the hearing that he might be released in July 2015 and wanted to reunify with the child. The court took jurisdiction over the child, declared Jose to be the child's biological father, ordered services for Jose, and continued the child's placement with the mother with family maintenance services. The court ordered no visitation between Jose and the child until he could be assessed by the Department.

At a May 2015 review hearing, Jose's trial counsel told the Department that Jose hoped to be released soon, and she explained that she had told him "that he needed to contact the social worker right away and comply with the case plan, so he can have visits

2

with his daughter." Jose was released from jail on June 26, 2015, but he had no contact with the Department prior to the August 25, 2015 six-month review hearing.

Jose was present at the August 25, 2015 six-month review hearing. The Department asked the court to terminate Jose's services, and Jose did not oppose that request. Jose's trial counsel informed the court that Jose was participating in an inpatient drug treatment program, "and what is really important to him is visitation." Jose had not yet contacted the Department to be assessed for visitation. The court found that Jose had made no progress, and it terminated his services but continued services to the mother. The court declared Jose to be "for all purposes the legal father" of the child. The court ordered that Jose have no visitation with the child until the Department could determine whether visitation would be safe for the child.

At some point after the August 25, 2015 hearing, Jose contacted the Department. Visits were scheduled, but Jose did not attend the scheduled visits, resulting in the suspension of visitation. The Department later learned that Jose "was having visitation outside of the Department." At some time between July 2015 and December 2015, the mother had begun allowing Jose to visit the child on a weekly basis at her residence without the Department's knowledge. In December 2015, the Department took the child into protective custody and filed a section 387 supplemental petition after the mother relapsed and became uncooperative with the Department and service providers.

Jose was present at the December 16, 2015 detention hearing. The child was detained and placed in foster care. The court granted Jose weekly supervised visits with the child beginning in December 2015, and these visits were "described to go well." In early February 2016, both parents were ordered to submit to drug testing. Jose tested negative. The mother tested positive.

The jurisdictional/dispositional hearing on the supplemental petition was held in late February 2016. The Department recommended that Jose be denied reunification services under section 361.5, subdivisions (a) [court may grant services to biological

father if it will benefit the child] and (b)(12) [services may be bypassed if the parent has been convicted of a violent felony]. It asserted that Jose's prior burglary conviction was a violent felony under Penal Code section 667.5, subdivision (c)(21). The Department had "concerns" about Jose's desire to reunify with the child because "he is currently focusing on his recovery." The Department argued that the child "shouldn't have to wait" because she "needs to have stability."

Jose, who remained in an inpatient treatment program at the time of the hearing, sought reunification services and "expressed interest in caring for" the child. He explained that he had not seen the need for services when the mother had the child in her custody, but he now wanted reunification services since the mother was not able to care for the child. Jose challenged the Department's assertion that he had suffered a violent felony conviction and asserted that he would be able to reunify with the child if he were granted six months of reunification services. Jose's trial counsel conceded that "at this point he is an alleged father," but she asserted that he could become a presumed father by making "a declaration of paternity." She asked the court to grant Jose services "so that he can attempt to reunite with [the child] and demonstrate that he is and can be an appropriate parent, and he wants to be assessed for placement once he gets into a residence that would be appropriate for a child, because he is not in a residence right now." Jose asserted that he would "be able to get a job" in three months.

The court explained that "[a] big issue for the Court today is looking to the best interest of [the child]." "[I]t does not appear to be in the best interest of the child at this point" to extend services to either parent. "This is a six-month case" (due to the child's age), and "[s]ix months is not enough time for either parent" to demonstrate that they can appropriately parent the child. The court removed the child from the mother's custody, found that it would be detrimental to the child to place her with Jose, and denied reunification services to both parents. The court found that Jose was "not entitled to family reunification services because the provision of services to him would not benefit

4

the child." It also made a written finding "[b]y clear and convincing evidence" that Jose "has been convicted of a violent felony, as defined in Penal Code Sec. 667.5(c) . . . ." The court set a section 366.26 hearing for June 14, 2016. Jose timely filed a notice of intent to file a writ petition.

## II. Discussion

Jose contends that he was *entitled* to reunification services as a matter of right because the court made a finding that he was the "legal father" of the child. "[W]henever a child is removed from a parent's or guardian's custody, the juvenile court *shall* order the social worker to provide child welfare services to the child and the child's mother and *statutorily presumed father* or guardians. Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court *may* order services for the child and the *biological father*, if the court determines that the services will benefit the child." (§ 361.5, subd. (a), italics added.)

Although a *presumed* father is entitled to reunification services, a biological father is not entitled to reunification services but may be afforded services in the juvenile court's discretion only if the court "determines that the services will benefit the child." (§ 361.5, subd. (a).) Jose's reliance on *In re Jesusa V.* (2004) 32 Cal.4th 588 (*Jesusa*) is misplaced because the California Supreme Court stated in that case that "[a] declaration of *presumed fatherhood* entitles the *presumed father* to reunification services and custody of the child . . . ." (*Jesusa*, at p. 610, italics added.) The juvenile court never declared Jose to be the presumed father of the child. Indeed, Jose never asserted in the juvenile court that he was the child's presumed father (Fam. Code, § 7611), and his trial counsel conceded that his status was merely that of an "alleged father." Consequently, Jose was not entitled to reunification services as a matter of right.

5

Since Jose was a biological rather than presumed father, the juvenile court had discretion to afford Jose services if it found that such services would benefit the child. The juvenile court expressly found that the child would not benefit from granting services to Jose because six months would not be enough time for him to reunify with the child. We review this finding for abuse of discretion. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 589.)

Jose knew that he was the child's biological father in March 2015, when the child was less than three months old. He was granted services at that time and told how important it was for him to contact the Department as soon as he was released in order to pursue reunification with the child. Despite this admonition, Jose made no effort to contact the Department or engage in services for months after his release. He did not contest the termination of his services in August 2015, and he made no subsequent efforts to demonstrate to the Department that he was committed to developing a relationship with the child. Instead, Jose waited until the child was detained in December 2015 before beginning Department-supervised weekly visits with the child. Although these visits went well, the child was now a year old, and her need for permanency had become acute. Jose continued to live at a residential drug treatment program, and he conceded that he could not provide a home for the child. Under these circumstances, the juvenile court did not abuse its discretion in concluding that it would not benefit the child to delay permanency for six months or more so that Jose would have an opportunity to utilize services that he had chosen not to utilize six months earlier.

Jose challenges the juvenile court's written finding that he had suffered a "violent felony" conviction. Reunification services need not be provided to a parent if "the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (§ 361.5, subd. (b)(12).) The Department claimed that Jose's prior burglary conviction was a "violent felony" under Penal Code section 667.5, subdivision (c)(21). A burglary conviction is a "violent felony" under that

6

provision only if it is "burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (Pen. Code, § 667.5, subd. (c)(21).)

The juvenile court's "violent felony" finding is not supported by any evidence in the record. The documents produced by the Department did not demonstrate that either of Jose's burglary convictions was a first degree burglary conviction let alone that in either proceeding it had been "charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." Nevertheless, the juvenile court's erroneous finding had no impact on the result in this case. The juvenile court did not make a "violent felony" finding at the hearing, where its decision not to grant Jose reunification services depended entirely on its finding that services would not benefit the child. Since there is no indication that the court's subsequent erroneous written finding (in orders prepared by the Department) played any role in the court's discretionary decision at the hearing, we are satisfied that the court's denial of reunification services to Jose was based solely on the lack of benefit to the child. Thus, the juvenile court did not abuse its discretion.

## III. Disposition

The petition is denied.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.


Jose E. v. Superior Court
H043293